# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Shams Walizada Construction Company | ) | ASBCA Nos. 61411, 61469 |
| | ) | |
| Under Contract No. H92237-11-C-0608 | ) | |

APPEARANCE FOR THE APPELLANT:   Mr. Shams UR Rehman
                                President

APPEARANCES FOR THE GOVERNMENT:   Jeffrey P. Hildebrant, Esq.
                                  Air Force Deputy Chief Trial Attorney
                                  Heather M. Mandelkehr, Esq.
                                  Lt Col Byron G. Shibata, USAF
                                  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE CLARKE

This appeal involves a contract for construction of a "pole barn" at a site in Afghanistan. Appellant, Shams Walizada Construction Company (SWCC), claims $25,000 for "additional interest." SWCC elected to proceed under Board Rule 12.2,[1] Small Claims (Expedited) Procedure and Rule 11, Submission Without a Hearing. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. ¶¶ 7101-7109. We deny the appeal.

## FINDINGS OF FACT

*Contract No. H92237-11-C-0608*

1. On 1 April 2011 the Air Force (AF) awarded SWCC a firm-fixed-price (FFP) contract, H92237-11-C-0608 (0608), for the construction of a pole barn at Ghazni Meet Site, Afghanistan, in the amount of $42,154.45 (R4, tab 1 at 1-3). Performance was to be completed 30 calendar days after the notice to proceed (NTP) (*id.* at 3). Contract 0608 included the following clauses: Clause G1., Invoices, that explained how the contractor was to submit invoices (*id.* at 4); Clause H-7., Hours of Work, that included, "While the Government will make its best effort to make forces available, if a Government inspection or escort force is not available, the Contractor

---

[1] A decision under Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

will still be liable to complete the work within the specified time period"[2] (*id.* at 8); Clause H-8., Release of Claims, that required, "Upon completion of the work and prior to final payment, the contractor shall be required to furnish to the Contracting Officer a Release of Claims (Attachment 1) per FAR 52.232-5, Payments Under Fixed-Price Construction Contracts" (*id.* at 8); and Clause H-15., Escorts Badging, that states, "The contractor is responsible for providing badging for all workers and coordinating all required escorts for the duration of the project. Contractor is responsible for all escort costs." (*Id.* at 9) Contract 0608 incorporates by reference FAR 52.232-5, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION (SEP 2000), that requires the execution of a release and submission of a voucher "after completion and acceptance of all work" (*id.* at 16).

2. Contract 0608 includes a Scope of Work (SOW) that required the contractor to coordinate with the contracting officer representative (COR) for delivery of all supplies and equipment to the construction site (R4, tab 2 at 2). The SOW required the AF to "provide coordination for contractor's vehicles, personnel and equipment to enter ANA/ETT Base" (*id.* at 4).

*Contract Performance*

3. Although the record is limited, it appears SWCC was told to start performance on 24 September 2011 (R4, tab 9 at 1-2). SWCC delivered material to the job site and poured a concrete pad "in accordance with the contract." The contract was not successfully completed. (*Id.* at 1)

*The $26,126 Claim*

4. By email dated 7 September 2016, SWCC submitted a claim stating that it had never been paid for "all our expense we did under this contract"[3] (R4, tab 8 at 1). Attached to the email was a copy of the contract and a series of emails between the date of the contract and 2 January 2012 (*id.* at 48-70). The emails present a confusing exchange where SWCC stated it could not get into the work site because the AF would not respond to its requests for access and the AF responding that SWCC's workers were not present for work (*id.*). There is no voucher or request for payment in the 2011 documents. The record includes nothing between 2 January 2012 and the 7 September 2016 claim submission.

---

[2] We wonder how the contractor could be liable to complete the work within the specified time if the government failed to provide escorts thereby preventing the contractor access to the work site which is apparently what happened in this contract. We need not resolve that issue today, however.

[3] A sum certain was not evident in the 7 September 2016 claim (R4, tab 8).

2

5. According to the 31 October 2016 contracting officer's final decision, SWCC submitted a claim for $26,126 on 15 August 2016 (R4, tab 9 at 1).[4] In his 31 October 2016 final decision contracting officer (CO) SFC Desmond Culler granted SWCC's claim and approved payment of the $26,126 upon submission of a signed modification and an invoice for that amount (*id.* at 3).[5] In the final decision the AF did not contest SWCC's assertion that it delivered materials to the site and poured a concrete pad "in accordance with the contract" (R4, tab 9 at 1). Therefore, I find that SWCC successfully completed that much of the contract. The final decision cited "inconsistencies with the performance schedule ultimately prevented the completion of work under the contract" (*id.*). The final decision included the following determination:

> After a review of SWCC's claim and the supporting email documentation supplied, I have determined that although SWCC made repeated efforts to finish the work under the terms and conditions outlined within the contract, it was ultimately unable to gain access to the base to get to the worksite.

(R4, tab 9 at 2)

6. On 16 November 2016 SWCC and CO Culler signed bilateral Modification No. P00002 that allowed the $26,126 for "Claim Settlement" (R4, tab 10 at 3). Modification No. P00002 included the following release:

> The Contractor hereby releases the US Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the "proposal(s) for adjustment". No further claims, demand, or cause of action, legal, equitable, contractual, or administrative, to include the unabsorbed overhead, that may have arisen from, resulted from, or related to the work as set forth in the terms of the contract may be made against the US Government.

(R4, tab 10 at 1) There were no exclusions or reservations associated with the release (*id.*). Also on 16 November 2016 SWCC submitted an invoice for $26,126 (R4, tab 12). The AF attempted to pay the invoice twice in March and April 2017 but

---

[4] The 15 August 2016 claim does not appear to be in the record.

[5] The AF discusses the claim history which we skip because it is not relevant to our decision (gov't br. at 2-3).

3

SWCC's banks rejected the payment (R4, tab 13). The $26,126 was paid 27 July 2017 (R4, tab 11).

*The $25,000 Claim*

7. By email dated 22 September 2017, SWCC submitted a second claim for $25,000 stating in part:

> 2. Our Employees and Staffs who worked under this contract keep charging us interests and penalty for late payment under this contract[,] which were delayed from US Government in not paying SWCC on time.
>
> 3. Our Company SWCC was owing the US Government under this contract $26,126.00, which should have been paid by January 2012. But it has been paid to Our Company after 5 and half years, which was paid 28 July 2017.
>
> 4. Therefor SWCC has the right according to contract terms and conditions to charge the US Government an additional amount of $25,000.00 interest, which equals to $378.00 a month for the delay in our payments.
>
> 5. SWCC is submitting their claim for the interest in the amount of $25,000.00 against the Government for its fault in not paying our company in time.

(R4, tab 18 at 2) A copy of the 31 October 2016 final decision was attached to the claim (*id.* at 4).

8. On 21 December 2017, CO MAJ Daniel Weidman issued a final decision denying SWCC's $25,000 claim (R4, tab 20). The CO listed three reasons why the claim was denied: Release of Claims in Modification No. P00002; FAR 52.232-27 Prompt Payment for Construction Contracts clause does not provide for interest penalties if there is disagreement over the claimed amount; and final payment (*id.* at 4).

9. On 22 December 2017, SWCC appealed to the Board the CO's 21 December 2017 final decision and requested the Small Claims (Expedited) Procedure. SWCC attached the final decision and table listing "Late Payment Penalty." SWCC listed 17 employees it contends were paid $1,470 each. For each employee there is a payment voucher attached to the appeal letter filled out between 6 and 10 August 2017.

4

There is no indication when the payments were made other than the August 2017 dates. There is no discussion of how SWCC was liable for making these payments.

## DECISION

Both parties filed briefs; only the AF filed a reply brief. The AF relies on four main arguments: Modification No. P00002's release, accord and satisfaction, final payment,[6] and SWCC's failure to prove entitlement. SWCC reiterates its previous arguments but does not address the release in Modification No. P00002 or explain why it was liable to pay its workers' claims.

*No Proof of Payment Request until 2016*

Although SWCC provided material to the site and poured a concrete pad in 2011, the contract was not completed (finding 3). The first problem SWCC faces on this record is there is no evidence that it ever submitted a request for payment such as an invoice or voucher to the AF until its claim on 7 September 2016 (finding 4). SWCC fails to explain how the AF is liable for late payment when SWCC did not request partial payment until 2016. SWCC failed to meet its burden of proof that it submitted a request for payment in 2012.

*No Proof of SWCC's Liability for the $25,000*

According to SWCC it has "the right according to contract terms and conditions to charge the US Government an additional amount of $25,000.00 interest" for late payment of the $26,126 (finding 7). SWCC presented no evidence or argument attempting to prove where this "right" came from or that it was obligated to pay the $25,000.00 "interests and penalty for late payment under this contract" to its employees (*id.*). In its reply brief the AF characterizes SWCC's claim as a "pass-through claim for its employees" with which we agree (gov't reply br. at 2). The AF correctly cites to *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369 (Fed. Cir. 1999), for the proposition that SWCC must prove that it is liable to its employees for the late payment fees before a pass-thorough claim may be made. *Id.* at 1374. SWCC failed to meet its burden of proof that it is liable to its employees for the "interest and penalty" amounts paid.

---

[6] The Air Force cites FAR 52.232-5 but it requires completion and acceptance of all work, a voucher and release other than for claims excepted from the release. FAR 52.232-5(h). FAR 52.232-5 and the final payment defense does not apply to a settlement situation.

*Modification No. P00002 & Release*

Modification No. P00002 included a release that stated in part, "No further claims, demand, or cause of action, legal, equitable, contractual, or administrative, to include the unabsorbed overhead, that may have arisen from, resulted from, or related to the work as set forth in the terms of the contract may be made against the US Government" (finding 6). SWCC fails to explain why this release is not enforceable. We agree with the government's reliance on *Mary Lou Fashions, Inc.*, ASBCA No. 29318, 86-3 BCA ¶ 19,161, for the proposition that, "[i]t is a fundamental rule that a contractor who executes a general release is thereafter barred from claiming additional compensation under the contract on the basis of events that occurred prior to the execution of the release unless there are special circumstances present which vitiate the release." *Id.* at 96,845. The contract included instructions on how to submit invoices (finding 1). Although the Payment Invoices are all dated in August 2017, which is after the release was executed on 6 November 2016, the "events" causing the claimed payments to the workers was the delay in payment to SWCC commencing in January 2012 which is well before the execution of the release. SWCC failed to meet its burden of proof as to why the Board should not enforce the release SWCC agreed to in Modification No. P00002.

*SWCC's Bank Delays*

After the AF approved the payment of $26,126 in the 31 October 2016 final decision, SWCC signed Modification No. P00002 on 16 November 2016 and submitted an invoice on the same day (finding 6). The AF attempted to pay the invoice twice in March and April 2017 but SWCC's banks refused to accept the payments. The $26,126 was paid on 27 July 2017. (*Id.*) This delay in payment was not the AF's fault.

## CONCLUSION

In addition to the failures of proof by SWCC mentioned above, we find that SWCC's $25,000 claim is barred by the release in bilateral Modification No. P00002. The appeal is denied.

Dated: 15 March 2018

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61411, 61469, Appeals of Shams Walizada Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
